# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BRADY CAMPAIGN TO PREVENT GUN )
VIOLENCE, on its institutional behalf and on )
behalf of its members )
            )
       **Plaintiff,** )
     **v.** )     **Case No. 14-CV-2327-JAR/KGG**
            )
SAM BROWNBACK, Governor of the State of )
Kansas, in his official capacity, and DEREK )
SCHMIDT, Attorney General of the State of )
Kansas, in his official capacity, )
            )
       **Defendants.** )
_____ )

# MOTION TO DISMISS

Defendants hereby move for dismissal of all claims against them pursuant to F.R.C.P. 12 for lack of subject matter jurisdiction and/or for failure to state a claim on which relief may be granted. Dismissal is appropriate for any or all of the following reasons:

1. The relief sought is unavailable under the Eleventh Amendment;

2. Plaintiff lacks both Article III standing and prudential standing, and there is no justiciable case or controversy between the parties;

3. The Second Amendment Protection Act is facially valid legislation that is not constitutionally infirm, either under the United States Constitution or the Kansas Constitution.

Whether the Court dismisses this case for lack of jurisdiction or reaches the merits, the relief requested must be denied as a matter of law.

The Complaint is based on mistaken assumptions about federal gun control laws and the operation of the Second Amendment Protection Act within the federal system. The Second Amendment Protection Act does not seek to nullify existing federal gun control laws, nor does it criminalize any conduct that is not properly punishable as a crime. The law seeks instead to enforce the Second Amendment and the Tenth Amendment, by codifying existing Commerce Clause precedents and punishing violations of the established rights of the people of the State of Kansas. The plain language of the Second Amendment Protection Act is not vague, in light of pertinent precedents. The Act is fully consistent with *Printz v. U.S.*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), *U.S. v. Patton*, 451 F.3d 615 (10th Cir. 2006) and *Wyoming v. Livingston*, 443 F.3d 1211 (10th Cir. 2006). The Act is not preempted by any federal law.

Because Congress has no constitutional authority to order a state to administer federal laws there can be no lawful basis to enjoin any Kansas official to assist in the enforcement of federal gun control laws. Due process will be afforded to anyone who is prosecuted under the Second Amendment Protection Act. Persons prosecuted under the Second Amendment Protection Act will be entitled to the protection of federal removal statutes and will be shielded by Supremacy Clause immunity only if legal necessity exists for any violation of Kansas law. Only wrongful conduct that exceeds the established limits of federal authority will be punished. Federal law compelled these conclusions before passage of the Second Amendment Protection Act. The Second Amendment Protection Act recognizes and codifies these federal law principles rather than creating them. State and local officials cannot invoke federal law to avoid restrictions imposed on their official duties by state statutes. Nothing in the Kansas Constitution allows local officials to nullify state laws that circumscribe their official powers.

## NATURE OF THE CASE

Plaintiff Brady Campaign is a political lobbying organization whose members advocate adoption of stricter gun control laws. (Complaint paragraph 17) The Complaint asserts that the Second Amendment Protection Act (K.S.A. 50-1201 *et seq*.) is facially unconstitutional because it violates the Supremacy Clause and fails to provide due process to persons subject to its penal provisions. (Complaint paragraph 12) The Complaint contends that the Second Amendment Protection Act seeks to nullify existing federal gun control laws, in particular the National Firearms Act of 1934 (26 U.S.C. Chapter 53) and the Gun Control Act of 1968 (18 U.S.C. Chapter 44). (Complaint paragraphs 3 and 35) The Complaint seeks only declaratory and injunctive relief. (Complaint paragraphs 14-15) The precise nature of the injunctive relief sought is not stated, but the narrative portions of the Complaint imply that Brady Campaign seeks an injunction compelling Kansas executive officials to assist in the enforcement of federal gun control laws. No relief against state court judges is expressly requested.

For its jurisdictional basis the Complaint relies upon the Fourteenth Amendment, the Supremacy Clause, 42 U.S.C. §1983, 28 U.S.C. §1331, and 28 U.S.C. §1343. (Complaint paragraph 13) Four "causes of action" are described in the Complaint:

1. Injunctive relief under the Supremacy Clause (page 24);

2. Fourteenth Amendment violation of due process due to vagueness (page 25);

3. 42 U.S.C. §1983 violation based on deprivation of unspecified rights (page 27); and

4. Violation of the Kansas Constitution, based on deprivation of due process (page 28).

## PARTIES

Plaintiff Brady Campaign describes itself as a "membership organization" existing under the laws of the District of Columbia. (Complaint paragraph 17) Brady Campaign seeks to vindicate the rights of its individual members, rather than asserting its own rights as a business entity. (Complaint paragraph 17) The Complaint identifies individual members of the plaintiff organization who fall into two categories. First is the mayor of Hiawatha, Kansas, who is alleged to fear being a future target of enforcement proceedings under the Second Amendment Protection Act even though he plays no direct role in the enforcement of any laws related to firearms. (Complaint paragraph 18) The other members are described as Kansans who are concerned that their personal safety or the safety of family members may be diminished if the Second Amendment Protection Act is given full force and effect. (Complaint paragraphs 19-23)

The Complaint does not identify any federally protected personal right of a member that is threatened by the Second Amendment Protection Act. The Complaint affirmatively alleges that the provisions of the Second Amendment Protection Act are too vague to permit plaintiff's members to determine what effect the law will have on them or on law enforcement officials. (Complaint paragraphs 62, 64, 85, 86, 105, 109) No Brady Campaign member is described as a federal law enforcement official or a federal contractor engaged in enforcing federal gun laws inside or outside the borders of Kansas. The Complaint does not identify any Brady Campaign member who has come into contact with, or has either seen or heard of an existing firearm manufactured in Kansas. The Complaint contains no allegation that any member of Brady Campaign has been threatened with criminal prosecution or civil liability under the Second Amendment Protection Act, or that any Brady Campaign member plans to perform an act that is

punishable under the plain language of the Second Amendment Protection Act. Although the Complaint alleges that Hiawatha Mayor Crosby Gernon fears potential civil liability under the Second Amendment Protection Act, there is no allegation that the Act contains any language potentially imposing civil liability on him or on anyone else.

The sole named defendants are the Governor of the State of Kansas and the Attorney General of the State of Kansas, in their official capacities. But injunctive relief is also sought against "all other persons acting on behalf of the State of Kansas". (Complaint paragraph 2) The Complaint identifies no role played by the Governor or by the Attorney General in enforcing the Second Amendment Protection Act or in prosecuting violations of the Act, other than the grant of authority to the Attorney General to pursue litigation seeking declaratory relief in the event of a suspected violation. The Complaint does not allege that the Attorney General plans to file litigation under the Second Amendment Protection Act, or that the filing of a declaratory judgment lawsuit would violate anyone's legal rights under either state or federal law. Neither defendant is alleged to have threatened to take action to enforce the Second Amendment Protection Act. None of the anticipated enforcement actions described in the Complaint would personally involve either the Governor or the Attorney General, who ordinarily do not participate in criminal prosecutions. The Complaint does not accuse either named defendant, or any other person acting on behalf of the State of Kansas, of participating in an ongoing violation of anyone's federally protected rights, within the meaning of ***Ex parte Young,*** 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

**THE SECOND AMENDMENT PROTECTION ACT**

The statutes that Brady Campaign seeks to have declared unconstitutional appear as K.S.A. 50-1201 through 50-1211. Most of these provisions are not challenged. The Complaint appears to focus on Brady Campaign's interpretation of K.S.A. 50-1204, 50-1206, and 50-1207.

K.S.A. 50-1204 relates to personal firearms, accessories, and ammunition which are manufactured in Kansas and which never leave the State of Kansas. Brady Campaign challenges the legal correctness of the statement made in this section that such items are "not subject to any federal law, treaty, federal regulation, or federal executive action, including any federal firearm or ammunition registration program, under the authority of congress (sic) to regulate interstate commerce. It is declared by the legislature that those items have not traveled in interstate commerce." This section similarly states that bringing firearms components or accessories into Kansas and incorporating them into a firearm will not subject the resulting weapon to federal legislation applicable to firearms that have crossed a state line. Brady Campaign objects to this section as an alleged violation of the Supremacy Clause.

K.S.A. 50-1206 contains two provisions, each of which Brady Campaign finds objectionable. First is a statement that "Any act, law, treaty, order, rule, or regulation of the government of the United States which violates the Second Amendment is null, void and unenforceable" in Kansas. Second is a restriction on the authority of Kansas law enforcement personnel, prohibiting them from assisting in the enforcement of federal gun control laws directed at the regulation of firearms and ammunition that are made in Kansas and that stay inside the borders of Kansas. Brady Campaign objects to this section as an alleged violation of the Supremacy Clause and/or the Due Process Clause.

K.S.A. 50-1207 sets forth a criminal penalty applicable to "any official, agent or employee of the United States, or employee of a corporation providing services to the government of the United states to enforce or attempt to enforce any act, law, treaty, order, rule or regulation of the government of the United States" with respect to firearms, firearm accessories, or ammunition made in Kansas that have stayed in Kansas. Brady Campaign challenges this criminal enforcement provision as void for vagueness under the Due Process Clause.

The Second Amendment Protection Act does not address some subjects that are discussed in the Complaint. The Act does not impose civil liability on anyone. The only civil remedy created by the Second Amendment Protection Act is the authority granted to state prosecutors and to the Kansas Attorney General to pursue declaratory relief. The Act does not criminalize any conduct of state or local government employees. It does not say anything about federal laws that regulate firearms and ammunition manufactured outside the borders of Kansas, even if those items are eventually brought into Kansas. The Act does not decriminalize any behavior that was unlawful under Kansas law before its passage. It does not address the enforcement of any federal law enacted under authority of some constitutional power other than the Interstate Commerce Clause. The Act does not apply to machine guns, weapons that fire explosive projectiles, or firearms that cannot be carried and used by a single person. See K.S.A. 50-1209.

## ARGUMENT AND AUTHORITIES

## GENERAL PRINCIPLES

Federal courts are courts of limited jurisdiction. Lack of jurisdiction is presumed. The burden of establishing federal court jurisdiction falls on the party asserting that jurisdiction exists. See ***Devon Energy Production Co., L.P. v. Mosaic Potash Carlsbad, Inc.***, 693 F.3d 1195, 1201 (10th Cir. 2012); ***Kokkonen v. Guardian Life Ins. Co. of America***, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). Invocation of the remedy of declaratory judgment does not itself provide a basis for federal jurisdiction. See ***Cardtoons, L.C. v. Major League Baseball Players Ass'n***, 95 F.3d 959, 964 (10th Cir.1996). Federal question jurisdiction (or its absence) is determined by the "well pleaded complaint" rule, which ordinarily requires reliance on a federal cause of action. Under this rule, a declaratory judgment plaintiff must establish that either 1) any potential claim that might be asserted by the defendant would be completely preempted by federal law, or 2) there is a substantial, disputed federal-law issue necessarily embedded in the expected state-law claims. See ***Devon Energy***, *supra*, 693 F.3d at 1203-1204.

A factual attack on the Court's jurisdiction is appropriately made in the form of a motion to dismiss, even though matters outside the complaint are relied upon. When a factual attack is made against the Court's subject matter jurisdiction, the Court is not required to assume the truth of the complaint's factual allegations. See ***Rural Water Dist. No. 2 v. City of Glenpool***, 698 F.3d 1270, 1272 (10th Cir. 2012).

A facial attack on the constitutionality of a statute that does not regulate speech can only succeed "by "establish[ing] that no set of circumstances exists under which the Act would be

valid," i.e., that the law is unconstitutional in all of its applications." See ***Washington State Grange v. Washington State Republican Party***, 552 U.S. 442, 449, 128 S.Ct. 1184, 1191, 170 L.Ed.2d 151 (2008). The Complaint does not contend that the Second Amendment Protection Act regulates speech, and it does not allege that the Act violates federal law in every one of its potential applications. If neither condition is met, then the Second Amendment Protection Act cannot be facially unconstitutional. Since the Act does not apply to individual members of Brady Campaign on the facts alleged, it cannot be unconstitutional as applied to them.

## I.    THERE IS NO SUBJECT MATTER JURISDICTION.

There are many defects in the Complaint's assertion of federal subject matter jurisdiction. The wrong plaintiff has sued the wrong defendants in the wrong court. Some of the jurisdiction issues overlap, and can be analyzed under multiple labels. Eleventh Amendment immunity applies because neither named defendant is engaged in an ongoing violation of federal law. There is no case or controversy between the parties because the Second Amendment Protection Act does not affect the rights of Brady Campaign or its members. The Complaint states no cognizable federal cause of action under 28 U.S.C. §1331. The Complaint describes no violation of civil rights that could support jurisdiction under 28 U.S.C. §1343. The Complaint describes no threatened deprivation of anyone's life, liberty, or property without due process of law. The Complaint affirmatively establishes that there is no diversity of citizenship. Only Brady Campaign challenges the standard, settled interpretation of federal gun control laws, which the State of Kansas has not disputed and has adopted and codified as state law. The mere possibility that some future change in federal law might bring about a clash between Kansas law and federal law is not enough to permit this case to proceed in this Court.

## A.     ELEVENTH AMENDMENT IMMUNITY BARS THE RELIEF SOUGHT.

The Eleventh Amendment bars federal court lawsuits against a state or its officials acting within their official capacities, with a narrow exception allowing for prospective injunctive relief against individual officials for their ongoing violations of federal rights. See *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). No such prospective injunctive relief is being sought against either of the defendants named in this lawsuit. When a claim for injunctive relief is brought against a state official who is not involved in the enforcement of an allegedly unconstitutional statute, Eleventh Amendment immunity applies and requires dismissal of the claim. See *Peterson v. Martinez*, 707 F.3d 1197, 1205-1206 (10th Cir. 2013). A challenge to a state statute naming only individual officials who are not personally involved in enforcing or applying the statute is not properly brought in federal court. See *Bishop v. Smith*, --- F.3d ----, 2014 WL 3537847 (10th Cir. 2014). A state's governor and its attorney general are not properly named as defendants in a lawsuit seeking to enjoin the enforcement of a state statute that neither official administers. See *Bishop v. Oklahoma*, 2009 WL 1566802 (10th Cir. 2009).

The Second Amendment Protection Act will be enforced by state prosecutors and by judges, not by the Governor or the Attorney General. Any injunctive or declaratory relief could only be effective to the extent it applies to the officials who enforce the law. Ordering the Governor and/or the Attorney General to refrain from enforcing the Second Amendment Protection Act would be pointless, because they do not direct the actions of local prosecutors. The Complaint does not allege that the Attorney General plans to file a declaratory judgment action under the Second Amendment Protection Act, or that such an action would violate anyone's federal rights. The minimal requirements for jurisdiction under *Ex parte Young* are

therefore absent, and there is also a lack of Article III standing, according to **Bishop v. Oklahoma**, *supra*.

The due process claim presents no grievance that meets the test of **Ex parte Young** because no federal right of plaintiff or its members is being violated. No prosecution under the Second Amendment Protection Act is either underway or threatened. The Complaint identifies no Brady Campaign member who is a federal law enforcement agent or a federal contractor engaged in enforcement of federal gun laws. The sole Brady Campaign member who claims to fear that some enforcement action might be taken against him offers no factual basis for that fear. No Kansas prosecutor has suggested that Mayor Gernon or any other Brady Campaign member should be sanctioned for a possible violation of the Second Amendment Protection Act. The Mayor of Hiawatha is not described as a law enforcement official who is ever called upon to assist federal agents. Paragraph 18 of the Complaint recites that Mayor Gernon meets the definition of an "official, agent, or employee of the State of Kansas, or any political subdivision thereof" but it does not allege that he is called upon to perform any of the actions prohibited by K.S.A. 50-1206, which directs state officials not to "enforce or attempt to enforce any act, law, treaty, order, rule or regulation of the government of the United States regarding any personal firearm, firearm accessory or ammunition that is manufactured commercially or privately and owned in the state of Kansas and that remains within the borders of Kansas." Paragraph 51 of the complaint recites that Mayor Gernon fears that he might be exposed to civil or criminal sanction because he is a member of a group called "Mayors Against Illegal Guns", but this group is not a federal law enforcement organization. His fears of personal liability are plainly unfounded. Nothing in the Second Amendment Protection Act prohibits any state or local official from

joining an organization that advocates stricter gun control laws. The Act imposes no criminal liability on a state actor and no civil liability on anyone.

**B.    PLAINTIFF DOES NOT HAVE STANDING TO SUE AND THERE IS NO UNDECIDED FEDERAL QUESTION PRESENT.**

There is no justiciable legal controversy between these parties over which a federal court can exercise jurisdiction for at least two reasons:

1. Neither Brady Campaign nor its members have either Article III standing or prudential standing to litigate the issues raised in the Complaint;

2. There is no undecided legal controversy over a federal question raised in the Complaint.

**1.  LACK OF STANDING**

A federal court has no power to answer abstract questions posed by litigants who have no personal stake in the interpretation or application of a challenged law. Jurisdictional limits imposed by Article III require that a plaintiff present a case or controversy that the parties have standing to litigate. "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." See ***Clapper v. Amnesty Intern. USA***, __US__, 133 S.Ct. 1138, 1147, 185 L.Ed.2d 264 (2013):

> To establish Article III standing, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, ——, 130 S.Ct. 2743, 2752, 177 L.Ed.2d 461 (2010); see also Summers, supra, at 493, 129 S.Ct. 1142; Defenders of Wildlife, 504 U.S., at 560–561, 112 S.Ct. 2130. "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." Id., at 565, n. 2, 112 S.Ct. 2130 (internal quotation marks omitted). Thus, we have repeatedly reiterated that "threatened injury must be certainly impending to constitute injury in fact," and that "[a]llegations of possible future injury"

are not sufficient. Whitmore, 495 U.S., at 158, 110 S.Ct. 1717 (emphasis added; internal quotation marks omitted); see also Defenders of Wildlife, supra, at 565, n. 2, 567, n. 3, 112 S.Ct. 2130; see DaimlerChrysler Corp., supra, at 345, 126 S.Ct. 1854; Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); Babbitt v. Farm Workers, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). (Clapper, 133 S.Ct at p. 1147)

The Complaint filed in this case identifies no injury either remote or imminent, traceable to the Second Amendment Protection Act, that could be suffered by Brady Campaign or any of its members. The Act does not alter existing gun control laws - what was unlawful under federal law before remains unlawful, what was lawful under federal law but unlawful under state law also remains unlawful. There is no imminent threat of a concrete application of any part of the Second Amendment Protection Act to a member of Brady Campaign, without which there can be no standing to litigate abstract questions about how the law might possibly be applied to other persons someday. See *Summers v. Earth Island Institute*, 555 U.S. 488, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 34 ERC 1785, 119 L.Ed.2d 351 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). The remote fear of possible future injury inflicted by criminals does not impart standing to compel the enforcement of criminal laws. See *Linda R.S. v. Richard D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); *Leeke v. Timmerman*, 454 U.S. 83, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981); *Boyle v. Oklahoma Bar Association*, 998 F.2d 1559 (10th Cir. 1993).

To litigate a claim of federal preemption a plaintiff must demonstrate both Article III standing and prudential standing, and lack of either prevents the case from being heard. See *The Wilderness Soc. v. Kane County, Utah*, 632 F.3d 1162 (10th Cir. 2011), where lack of prudential standing defeated subject matter jurisdiction in a lawsuit seeking declaratory relief under the

Supremacy Clause. Even when a court finds that Brady Campaign has met the test of prudential standing, its challenges are still dismissed for lack of redressability. See ***Brady Campaign to Prevent Gun Violence United with the Million Mom March v. Ashcroft***, 339 F.Supp.2d 68 (D.D.C.2004). The Complaint identifies no adverse consequence flowing from the unchallenged existence of the Second Amendment Protection Act for the year prior to its filing, without which there can be no redressable grievance that could be cured by enjoining the continued enforcement of the law. Although the Complaint mentions a recent shooting in Overland Park by a Missourian who brought firearms into Kansas, no connection is alleged between that shooting incident and the Second Amendment Protection Act which might make the crime traceable to the statute. If the law had no adverse effect the first year, it will continue to have no adverse effect until circumstances change.

Invocation of the Supremacy Clause does not by itself give rise to federal question jurisdiction. The Supremacy Clause does not provide a cause of action to private litigants. See ***Chapman v. Houston Welfare Rights Organization***, 441 U.S. 600, 613, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979); ***Dennis v. Higgins***, 498 U.S. 439, 450, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991). A cause of action for violation of the Supremacy Clause instead relies upon an actual conflict between existing federal laws and state laws, without which there is no violation of the Supremacy Clause and no right to sue. See ***Golden State Transit Corp. v. City of Los Angeles***, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), 493 U.S. at p. 108 footnote 4; ***Planned Parenthood of Kansas and Mid-Missouri v. Moser***, 747 F.3d 814, 838 (10th Cir. 2014).

An unincorporated association is not a person with rights protected by 42 U.S.C. §1983. Such an association cannot sue for violation of constitutional rights under color of state law. See

*Lippoldt v. Cole*, 468 F.3d 1204 (10th Cir. 2006). A lesser unit of government within a state lacks standing to challenge a state statute based on alleged Supremacy Clause violations. See ***Board of County Commisioners of Sweetwater County v. Geringer***, 297 F.3d 1108 (10th Cir. 2002). If the City of Hiawatha lacks standing to raise Supremacy Clause complaints directly, its mayor and organizations to which he belongs should have no greater standing to do so indirectly.

## 2.  LACK OF A LIVE CONTROVERSY ON AN OPEN FEDERAL QUESTION

The Second Amendment Protection Act properly states the well-understood limits of federal power over wholly intrastate construction and possession of firearms and ammunition. The Second Amendment Protection Act is fully compatible with the continued enforcement of existing federal laws as they were enforced before it became law. If any conflict ever arises between Kansas law and federal laws, it will be because some new federal gun control effort violates clearly established limitations on federal power. No conflict with a federal gun control law could arise before there are firearms and/or ammunition manufactured in Kansas, even if federal law changes. When and if a conflict ever arises between federal law and the Second Amendment Protection Act, there is no reason to believe it will involve the rights of any Brady Campaign member.

The Complaint does not accurately state the substance of existing federal gun control laws. The Complaint alleges only hypothetical conflicts that do not exist as federal law gun laws are now construed and applied by federal courts. There is no present and actual conflict between the Second Amendment Protection Act and any existing federal gun control statute. The mere possibility that Congress might someday enact a statute that could conflict with the Second Amendment Protection Act is not enough to generate a justiciable controversy. No firearm

manufactured in Kansas has been subjected to federal regulation, and no prosecution has yet been threatened under the Second Amendment Protection Act. There is no ripe controversy within the meaning of *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003).

The Complaint alleges that the Second Amendment Protection Act violates the Supremacy Clause because it misstates the scope of the Interstate Commerce Clause, but it does not identify any federal statute that would act to preempt state law. Neither the 1934 National Firearms Act nor the 1968 Gun Control Act purport to preempt or displace continuing state authority to legislate on the subject of gun control. See 18 USCA § 927. The Complaint cites no federal law that violates the Second Amendment and which nonetheless deserves to be enforced in Kansas contrary to K.S.A. 50-1206(a). There is no actual conflict between federal law as interpreted in the Tenth Circuit and the Second Amendment Protection Act, and so no possibility of preemption.

Kansas is not required to assist in the enforcement of federal gun control laws. It is well established under *Printz v. U.S.*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) that Kansas executive officers cannot be required by federal lawmakers to take action to enforce federal gun control laws. Federal courts with jurisdiction in Kansas do not extend Congressional authority under the Interstate Commerce Clause to firearms and ammunition that meet the definitions appearing in the Second Amendment Protection Act, as explained in *U.S. v. Patton*, 451 F.3d 615 (10th Cir. 2006). No conflict is generated between Kansas law and federal law when these existing principles of federal law are incorporated into state law.

***Printz v. U.S.***, *supra*, established the constitutional limits on federal authority to compel state officials to assist in the enforcement and administration of federal gun control laws. ***Printz*** determined that state executive branch officials cannot be compelled to assist in the enforcement of federal gun control laws, even where the federal law is otherwise valid and fully enforceable against individuals. The ***Printz*** case did not rely on any restriction of Congressional authority under the Commerce Clause or any rights granted by the Second Amendment, but instead invoked general principles of federalism and the Tenth Amendment to reach the conclusion that federal officers should do the work of enforcing federal laws:

> By forcing state governments to absorb the financial burden of implementing a federal regulatory program, Members of Congress can take credit for "solving" problems without having to ask their constituents to pay for the solutions with higher federal taxes. And even when the States are not forced to absorb the costs of implementing a federal program, they are still put in the position of taking the blame for its burdensomeness and for its defects. (citation omitted) Under the present law, for example, it will be the CLEO and not some federal official who stands between the gun purchaser and immediate possession of his gun. And it will likely be the CLEO, not some federal official, who will be blamed for any error (even one in the designated federal database) that causes a purchaser to be mistakenly rejected. (See 521 U.S. at 930)

To the same effect see ***New York v. U.S.***, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992).

***Printz*** is binding on everyone with an interest in the Second Amendment Protection Act. Any grievance arising from the failure of Kansas to assist in the enforcement of federal gun control laws is obviously meritless, in light of its holding.

The Second Amendment Protection Act codifies the established limitations on Congressional authority to control firearms and ammunition under its power to regulate interstate commerce. The Act does not seek to constrain any other source of authority, such as the taxing power. The oldest federal gun control laws were originally enacted as tax regulations, and their

continuing validity rests upon the continued imposition of the taxes those laws reference. See *U.S. v. Dalton*, 960 F.2d 121 (1992). There can be no conflict between the Second Amendment Protection Act and the 1934 National Firearms Act, which was enacted as a tax law rather than as a regulation of interstate commerce.

The United States Supreme Court has consistently interpreted federal gun control laws enacted pursuant to the Commerce Clause (such as the 1968 Gun Control Act) to be inapplicable to firearms that have never crossed a state line. See *U.S. v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); *Scarborough v. U. S.*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977); *Alderman v. U.S.*, __U.S.__, 131 S.Ct. 700, 178 L.Ed.2d 799 (2011); *U.S. v. Patton*, 451 F.3d 615 (10th Cir. 2006); *U.S. v. Campbell*, 603 F.3d 1218 (10th Cir. 2010).

As the *Patton* case described in detail, the most recent United States Supreme Court cases limiting the scope of Commerce Clause power in the context of public safety legislation cast serious doubt on the propriety of federal gun control legislation that relies exclusively on the circumstance that a firearm once crossed a state line. The comments of Justice Thomas in his dissent from denial of certiorari in *Alderman v. U.S.* describe why the next case to examine the continued vitality of the rule of *Scarborough v. U. S.* is more likely to limit the application of that rule rather than expanding federal jurisdiction to include all intrastate events and transactions. The *Patton* decision continues to be good law within the 10th Circuit today. See for example *U.S. v. Deiter*, 2014 WL 4068697 (10th Cir. 2014).

Machine guns are judged by different standards, at least in this circuit. The Tenth Circuit Court of Appeals considers them to be an inherent part of interstate commerce, unlike ordinary firearms. See *Patton*, 415 F. 3d at p. 623, footnote 4. This exception is not contradicted by the

18

Second Amendment Protection Act, which has no application to machine guns and so expresses neither agreement nor disagreement with this footnote. See K.S.A. 50-1209(c).

In 2013 the Kansas legislature did not presume to anticipate the future developments in constitutional jurisprudence described by Justice Thomas in his **Alderman** dissent. Instead Kansas law conformed to existing federal precedents, by adopting the rule of **Scarborough v. U.S.** rather than inventing some speculative standard that may or may not become federal law someday. A state statute that incorporates the existing rules followed by federal courts does not violate the Supremacy Clause. Only a change in longstanding federal jurisprudence could cast doubt on the principle of law that forms the foundation of the Second Amendment Protection Act, a limitation on federal authority over ordinary firearms and ammunition that have never crossed state lines.

Brady Campaign's objection to K.S.A. 50-1206(a) raises no open, debatable federal issue. Any law, either state or federal, that violates the Second Amendment rights of Americans is void and unconstitutional both inside Kansas and outside its borders by operation of federal law. A state law declaring the same result may be redundant, but it is not repugnant to federal law. There can be no doubt that some federal gun control efforts may be unconstitutional and therefore unenforceable because they violate the Second Amendment. See for example **District of Columbia v. Heller,** 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), confirming the application of the Second Amendment to federal laws. The Complaint does not identify any federal law that violates the Second Amendment rights of Kansans that Brady Campaign believes should nonetheless be enforced in Kansas. Instead Brady Campaign objects to the possibility that Kansas courts might be the first to decide that some federal law violates Second

Amendment rights. But Kansas courts are courts of general jurisdiction, with presumptive authority to interpret and apply the Constitution and to answer federal questions that have not yet been decided by federal courts. No federal law suggests otherwise. See ***Boston Stock Exchange v. State Tax Commission***, 429 U.S. 318, 320, 97 S.Ct. 599, 603, 50 L.Ed.2d 514 (1977) at footnote 3. The general jurisdiction of state courts is not an undecided question of federal law.

The due process claim is equally devoid of minimal substance in light of well established federal law. When prior judicial decisions give fair notice of what a defendant may lawfully do or not do, a criminal statute is not impermissibly vague. See ***U.S. v. Lanier***, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). There is nothing vague about the bright line rule discussed in ***U.S. v. Patton***, *supra*, requiring proof that an item has crossed a state line at least once before it can be the proper subject of federal regulation as a commodity in interstate commerce. A criminal law that punishes actions under color of federal law that violate this bright line limit is not unduly vague.

Federal law enforcement officers have never been absolutely immune from prosecution for state law criminal offenses committed while they are on duty. Instead they enjoy limited Supremacy Clause immunity, to the extent that the performance of their federal duties requires the violation of state law. See ***Wyoming v. Livingston***, 443 F.3d 1211 (10th Cir. 2006). If a federal agent commits an unnecessary and avoidable violation of state law in the course of performing his otherwise lawful duties he will be answerable for his actions under state law. An unnecessary and *ultra vires* criminal act is not protected by Supremacy Clause immunity from state law criminal prosecution. See ***Idaho v. Horiuchi***, 253 F.3d 359 (9th Cir. 2001); ***New York v. De Vecchio***, 468 F.Supp.2d 448 (E.D.N.Y. 2007). A federal agent would exceed his clearly

established lawful authority if he took enforcement action against a purely intrastate transaction, and he would thereby lose the protection of his Supremacy Clause immunity. In the event a state criminal charge was brought for an act of *ultra vires* enforcement, the agent would have the right to remove the case to federal court and have the immunity defense resolved by a federal judge, as occurred in ***Wyoming v. Livingston,*** *supra.* See 28 U.S.C. § 1442. Under K.S.A. 50-1207 no federal agent will be arrested for violating the Second Amendment Protection Act until after he has been convicted, and has received the same due process afforded any other criminal defendant. Without an arrest there can be no risk of loss of liberty before due process is provided.

## II. BECAUSE THE SECOND AMENDMENT PROTECTION ACT IS FACIALLY VALID AND CONSTITUTIONAL THE COMPLAINT FAILS TO STATE A CLAIM.

If the Court decides that it has subject matter jurisdiction and that proper parties are present to litigate the issues raised, it can then proceed to address the substance of the Complaint. Because there is an obvious lack of legal merit to the claims presented, dismissal for failure to state a claim would then be appropriate. Although many of the factual allegations of the Complaint are untrue, this lawsuit would have no legal merit even if they were true. Because defendants will have an immediate right of appeal if the Eleventh Amendment immunity defense is rejected, there is no practical need for this Court to decide issues of substantive merit or lack of merit.

The standard for considering a motion to dismiss for failure to state a claim is well settled:

"[A]ll well-pleaded allegations of the complaint are accepted as true and viewed in a light most favorable to the nonmoving party. *While factual assertions are taken as true, legal conclusions are not*. To survive dismissal under Rule 12(b)(6) for failure to state a claim, plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the [pleaded] factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)." [Emphasis supplied; see **Berneike v. CitiMortgage, Inc.**, 708 F.3d 1141, 1144-1145 (10th Cir. 2013)].

For the reasons discussed above, there is no substantive merit to any of the purported federal claims described in the Complaint. Because no existing federal law conflicts with the Second Amendment Protection Act there is no preemption and no violation of the Supremacy Clause. When federal courts repeatedly state that federal power extends up to a well-defined line and not beyond it, state law can enforce that limitation without violating either the Supremacy Clause or the Due Process Clause. Because only federal agents can be charged with a criminal violation of the Second Amendment Protection Act, and due process will be afforded to them in the same way it applies to any other federal agent charged with a crime in state court, there can be no violation of due process. The Second Amendment Protection Act is not vague under either federal or state law standards, because its application requires nothing more than reliance on a handful of existing federal precedents.

The facial constitutionality of each of the challenged statutes may be summarized succinctly:

- K.S.A. 50-1204 embodies the rules of constitutional and statutory construction discussed at length in **U.S. v. Patton**, 451 F.3d 615 (10th Cir. 2006), and so cannot be in conflict with existing federal law;

- K.S.A. 50-1206(a) states the obvious, undeniable principle that a law which violates the United States Constitution is unenforceable in Kansas. This provision

cannot possibly conflict with any federal law except an unconstitutional law, and so cannot violate the Supremacy Clause;

- K.S.A. 50-1206(b) applies the rule of *Printz v. U.S.*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), and so cannot conflict with any constitutionally valid federal law;

- K.S.A. 50-1207 punishes *ultra vires* federal law enforcement actions that transgress the bright line limits described in *U.S. v. Patton*. It is not an impermissible violation of Supremacy Clause immunity as that doctrine was explained in *Wyoming v. Livingston*, 443 F.3d 1211 (10th Cir. 2006) and so cannot conflict with existing federal law.

The Complaint does not describe even a partial conflict between federal law and some particular application of the Second Amendment Protection Act, let alone a complete preemption that would prevent the Act from having any constitutional application whatever. As long as there is any constitutionally permissible application of the Act, the law is facially constitutional as a matter of law under the test set out in *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, 128 S.Ct. 1184, 1191, 170 L.Ed.2d 151 (2008).

The Complaint mentions a federal court of appeals decision from another circuit, *Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975 (9th Cir. 2013), which disagrees with the analysis of *U.S. v. Patton*, 451 F.3d 615 (10th Cir. 2006). *Montana Shooting Sports* invoked the case of *Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) to conclude that federal gun control laws could be applied to firearms that never cross state lines consistent with the limitations placed on commerce clause powers in other recent decisions. *U.S. v. Patton* distinguished *Gonzales v. Raich* and limited its application to fungible contraband commodities that could not readily be identified as intrastate in origin, unlike firearms. See 451 F. 3d at pp.

627-629. ***Montana Shooting Sports*** did not involve a facial challenge to a state statute. It was instead a challenge to the application of a federal gun control law as applied to the plaintiff in that case premised on the effect of a Montana statute. No similar conflict between Kansas law and an existing federal gun control law is present in this case. ***Montana Shooting Sports*** did not address any Second Amendment issues, and did not decide whether the Montana law met the test of facial constitutionality. It did not decide whether the constitutional right to possess firearms distinguishes them from contraband that nobody has a constitutional right to possess. Until the Supreme Court addresses the conflict between the circuits squarely, the ***Patton*** case will remain the law within the 10th Circuit.

If the federal claims fail, then the Court should dismiss this case without addressing the state law claims. There is no diversity of citizenship between the parties, and no independent basis for assuming jurisdiction over claims that arise exclusively under state law. If the merits of the state law claims are reached, they should be dismissed for obvious lack of substantive merit.

The state law claim fails on the merits for the same reason the 14th Amendment vagueness challenge fails. It also fails because Kansas law does not give city mayors the right to object to limitations placed on their official duties by the Kansas legislature. Cities in Kansas operate under constitutional home rule, subject to laws of uniform application passed by the state legislature. If a city objects to a special, nonuniform law, it may opt out by charter ordinance. See ***Farha v. City of Wichita***, 284 Kan. 507, 161 P.3d 717 (2007). The City of Hiawatha either has the ability to opt out of the Second Amendment Protection Act or it does not - there is no middle ground under Kansas law. If the City could opt out but has not chosen to do so, Mayor Gernon needs to convince his town's lawmakers to do that rather than contesting the

constitutionality of the state law. If the city lacks the power to opt out, then there is no legal basis under the Kansas constitution for objecting to the enforcement of the law against anyone who acts on behalf of the City of Hiawatha including the mayor in his official capacity. What the mayor does in his free time is unaffected by the Second Amendment Protection Act.

## CONCLUSION

The Complaint should be dismissed. There is no legal conflict between the plaintiff organization and the named defendants that could be decided in a federal court. Plaintiff's grievance is with the federal appellate courts, not with the State of Kansas. The controlling cases establish beyond dispute that there is no conflict between the Second Amendment Protection Act and any existing federal law. If the enactment of new federal laws or the abandonment of longstanding federal precedents interpreting present laws generates a conflict, any real constitutional issue that may be generated at that time can be litigated in an appropriate forum between the real parties in interest to the future dispute.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

s/ Steve R. Fabert
Steve R. Fabert, KS Sup. Ct. No. 10355
Assistant Attorney General
Memorial Building, 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Phone: (785) 368-8420
Fax: (785) 291-3767
steve.fabert@ag.ks.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 8, 2014, I electronically filed the foregoing with the clerk of the court by using CM/ECF system which will send a notice of electronic filing to the following:

**Alla Lefkowitz**
Brady Center to Prevent Gun Violence, Legal Action Project
840 First Street NE, Suite 400
Washington, DC 20002
202-370-8105
Fax: 202-370-8102
Email: alefkowitz@bradymail.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher Sousa**
Morrison & Foerster, LLP -- Washington
2000 Pennsylvania Avenue NW
Washington, DC 20006-1888
202-887-1500
Fax: 202-887-0763
Email: csousa@mofo.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John R. Lanham**
Morrison & Foerster, LLP -- San Diego
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
858-720-5100
Fax: 858-720-5125
Email: jlanham@mofo.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan E. Lowy**
Brady Center to Prevent Gun Violence, Legal Action Project
840 First Street NE, Suite 400
Washington, DC 20002
202-370-8101
Fax: 202-370-8102
Email: jlowy@bradymail.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stuart C. Plunkett**
Morrison & Foerster, LLP -- San Francisco
425 Market Street
San Francisco, CA 94105-2484
415-268-7000
Fax: 415-268-7522
Email: splunkett@mofo.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James R. Wyrsch**
Wyrsch Hobbs Mirakian, PC
1000 Walnut Street, Suite 1600
Kansas City, MO 64106
816-221-0080
Fax: 816-221-3280
Email: jimwyrsch@whmlaw.net
*ATTORNEY TO BE NOTICED*

s/Steve Fabert
Steve Fabert