## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| BRADY CAMPAIGN TO PREVENT GUN VIOLENCE, on its institutional behalf and on behalf of its members, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 14-CV-2327-JAR |
| SAM BROWNBACK, et al., | ) ) | |
| Defendants. | ) ) ) ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Brady Campaign to Prevent Gun Violence ("Brady Campaign") brings this lawsuit seeking declaratory and injunctive relief against Kansas Governor Sam Brownback, Kansas Attorney General Derek Schmidt, and all other persons acting on behalf of the state of Kansas (collectively, "Defendants"), in their official capacities. Specifically, Brady Campaign requests the Court to declare unconstitutional and enjoin Defendants from enforcing the Kansas Second Amendment Act, which prohibits application of some federal gun control laws to personal firearms made and kept within Kansas borders.[1] The case is now before the Court on Defendants' Motion to Dismiss (Doc. 13). That motion is fully briefed and the Court is prepared to rule.[2]

---

[1] K.S.A. §§ 50-1201–1211.

[2] Having reviewed the parties' briefs, the Court finds that oral argument would not materially assist the Court in resolving the legal issues presented in Defendants' motion.

As explained in detail below, Brady Campaign lacks Article III standing to challenge the Second Amendment Protection Act in this lawsuit because it has not shown that enforcement of the statute inflicts an actual or imminently-threatened injury on any Brady Campaign member.  Accordingly, this Court lacks subject matter jurisdiction to consider the merits of this lawsuit and must grant Defendants' motion to dismiss.

## I.   Background

In April 2013, the Kansas legislature passed the Second Amendment Protection Act (the "Act"), codified at K.S.A. §§ 50-1201 through 50-1211.  The Act begins by declaring federal Commerce Clause legislation inapplicable to certain firearms and firearm accessories within the state of Kansas:

> A personal firearm, a firearm accessory or ammunition that is manufactured commercially or privately and owned in Kansas and that remains within the borders of Kansas is not subject to any federal law, treaty, federal regulation, or federal executive action, including any federal firearm or ammunition registration program, under the authority of [C]ongress to regulate interstate commerce.  It is declared by the legislature that those items have not traveled in interstate commerce.[3]

Section 50-1206(b) prohibits state employees and employees of local governments from enforcing federal regulations in a manner inconsistent with the Act:

> No official, agent or employee of the state of Kansas, or any political subdivision thereof, shall enforce or attempt to enforce any act, law, treaty, order, rule or regulation of the government of the United States regarding any personal firearm, firearm accessory or ammunition that is manufactured commercially or privately and owned in the state of

---

[3]K.S.A. § 50-1204(a).

Kansas and that remains within the borders of Kansas.[4]

The Act also contains enforcement provisions.  In particular, § 50-1207 makes it a felony for federal officials or agents to attempt to duly enforce federal regulations in violation of the Act:

> It is unlawful for any official, agent or employee of the government of the United States, or employee of a corporation providing services to the government of the United States to enforce or attempt to enforce any act, law, treaty, order, rule or regulation of the government of the United States regarding a firearm, a firearm accessory, or ammunition that is manufactured commercially or privately and owned in the state of Kansas and that remains within the borders of Kansas.  Violation of this section is a severity level 10 nonperson felony.[5]

Additionally, § 50-1208 permits the state attorney general and county and district attorneys to seek injunctive relief to enforce the provisions of § 50-1207 against federal officials, agents, or employees.[6] The Act does not expressly authorize similar civil or criminal enforcement proceedings against state or local employees.

Plaintiff Brady Campaign is a non-profit organization long committed to reducing gun violence nationwide.  It alleges that the Act is an unconstitutional attempt to nullify federal gun control regulations.  Brady Campaign alleges, for example, that the Act prohibits background checks for "Kansas" firearms, permits undocumented and unlicensed manufacture and sale of those firearms, and allows those firearms to be manufactured without serial numbers—all in clear violation of federal gun

---

[4]*Id.* § 50-1206(b).

[5]*Id.* § 50-1207.

[6]*Id.* § 50-1208.

control laws like the National Firearms Act of 1934[7] and the Gun Control Act of 1968.[8]  If state and local officials continue to enforce the Act, Brady Campaign contends, the statute's civil and criminal enforcement provisions will have the effect of deterring application of federal gun laws in Kansas, increasing the risk of gun violence within the state.

At least one Brady Campaign member—City of Hiawatha, Kansas Mayor Crosby Gernon—fears he will be criminally prosecuted or held civilly liable under the Act's enforcement provisions.  In his office as mayor, Crosby Gernon is vested with all executive and administrative authority in the city, and the Hiawatha Chief of Police is subject to Mayor Gernon's orders and policy decisions.  Mayor Gernon is also involved in the hiring and firing of the Chief of Police as well as serious disciplinary matters concerning local police officers.  Brady Campaign alleges that as a result of these duties, Mayor Gernon is subject to criminal prosecution as a "federal agent" "for any enforcement activities that involve federal authorities."[9]  Moreover, since Mayor Gernon is also a professor at the University of Kansas School of Medicine and a physician with the University of Kansas Hospital, Brady Campaign asserts he is an "official, agent, or employee of the state of Kansas" within the meaning of § 50-1206(b), and may therefore be held civilly liable under the Act if he enforces federal gun regulations in his office as mayor.

Other Brady Campaign members residing in Kansas fear that the Act compromises their personal safety.  Paul Temme, for example, was present at a horrific mass shooting at the Jewish

---

[7]26 U.S.C. §§ 5801–5872.

[8]18 U.S.C. §§ 921–931.

[9]Doc. 19 at 15.

4

Community Center of Greater Kansas City in April 2014, and has "been the subject of hateful internet attacks" since he began speaking publicly about that experience.[10]  Does 1 and 2 were also present at the Jewish Community Center shooting.  Temme now fears for his safety "since the Act makes it easier for dangerous individuals . . . to obtain firearms and bring them into public places."[11]  Harold Koch, another member of both the Brady Campaign and the Jewish Community Center of Greater Kansas City, tragically lost his fourteen-year-old brother in a shooting in Missouri in 1953 and has received threats due to his activism in the gun violence prevention movement.  Because of these experiences, Koch "has a heightened fear of gun violence that is exacerbated by the Act."[12]  Similarly, Susan Blaney and Loren Stanton are both active members of groups dedicated to preventing gun violence in Kansas.  With passage of the Act, both now fear for their own safety and the safety of their grandchildren.  Two other Brady Campaign members are long-time residents of Johnson County, Kansas, and were also present at the April 13, 2014, shooting at the Kansas City JCC.  The names of both members were withheld from the Complaint due to their fear for the physical safety of their respective families and due to the fear of retaliation from state and local authorities for their participation in the current lawsuit.

Brady Campaign thus brings this action seeking an injunction to prevent Defendants from enforcing the Act as well as a declaratory judgment that the Act is unconstitutional on its face.  Brady Campaign alleges four causes of action: (1) the Act is unconstitutional under the Supremacy Clause of the United States Constitution because it purports to nullify federal gun control laws and regulations and

---

[10]Doc. 1 ¶ 19.

[11]*Id.*

[12]Doc. 1 at 20.

to define the limits of congressional authority under the Commerce Clause; (2) the Act is void for vagueness under the United States Constitution because it is insufficiently explicit to inform who may be subject to its enforcement provisions or what conduct on their part will render them liable for penalties; (3) the Act is void for vagueness under the Kansas Constitution for the same reasons; and (4) under 42 U.S.C. § 1983 for deprivation of due process under the Fourteenth Amendment.

Defendants move to dismiss the action on the following grounds: (1) that Brady Campaign lacks standing to sue; (2) that Defendants are immune from suit under the Eleventh Amendment; and (3) that Plaintiff fails to state a claim upon which relief may be granted.

## II.    Discussion

Defendants argue that Brady Campaign lacks standing to sue on its claims that the Second Amendment Protection Act is unconstitutional under federal and state law.  Article III of the Constitution gives federal courts the power to exercise jurisdiction only over "Cases" and "Controversies."  As the Supreme Court has explained, "[i]n limiting the judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law.  Except when necessary in the execution of that function, courts have no charter to review and revise legislative and executive action."[13]

One of several doctrines reflecting Article III's case-or-controversy limitation on the judicial power is the doctrine of standing.  That doctrine requires federal courts, before considering the merits

---

[13]*Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).

of an action, to "'satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [the plaintiff's] invocation of federal-court jurisdiction.'"[14]

Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing each element of standing "with the manner and degree of evidence required at the successive stages of the litigation."[15]  Standing is evaluated based on the facts as they exist at the time the Complaint is filed.[16] At the pleading stage, the Court "'presume[s] that general allegations embrace those specific facts that are necessary to support the claim,'"[17] and "general factual allegations of injury resulting from the defendant's conduct may suffice.'"[18]  Nonetheless, the Court is "not bound by conclusory allegations, unwarranted inferences, or legal conclusions."[19]

Where, as here, a plaintiff organization brings suit on behalf of its members, the organization has standing to sue if "(a) its members would otherwise have standing to sue in their own right, (b) the interests it seeks to protect are germane to the organization's purpose, and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[20]  The second and third prongs of this test are not in question: the interests Brady Campaign seeks to protect

---

[14]*Id.* at 493 (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)).

[15]*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004).

[16]*Tandy*, 380 F.3d at 1284.

[17]*Lujan*, 504 U.S. at 561 (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)).

[18]*Id.*

[19]*Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994) (citations omitted).

[20]*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

in this action are germane to its purpose of reducing gun violence, and no one suggests the claims and relief requested require the participation of Brady Campaign's members. The question before the Court, therefore, is whether Brady Campaign has shown that one or more of its members would have standing to sue individually.

The Supreme Court has found the "irreducible constitutional minimum of standing" to contain three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result of the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[21]

To establish standing for prospective injunctive relief, "a plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future."[22]

The parties dispute whether Plaintiff suffers an "injury in fact," specifically, whether Brady Campaign alleges an injury that is sufficiently imminent.[23] Defendants contend that Brady Campaign

---

[21]*Lujan*, 504 U.S. at 560–61 (internal quotation marks and citations omitted).

[22]*Tandy*, 380 F.3d at 1283. Defendants also argue in their motion that Brady Campaign fails to demonstrate "prudential standing." There has been some recent "tension" between prudential standing challenges and the Supreme Court's repeated affirmation of the principle that "a federal court's 'obligation' to hear and decide" cases within its jurisdiction "is 'virtually unflagging.' " *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (quoting *Sprint Communications, Inc. v. Jacobs*,134 S.Ct. 584, 591 (2013)); *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014). Nonetheless, the Court need not reach Defendants' prudential standing arguments because it decides this case on grounds of Article III standing.

[23]This inquiry is closely tied to another justiciability issue—ripeness. The ripeness doctrine asks "'whether there is sufficient hardship to the parties in withholding court consideration until there is enforcement action.'" *Meimmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 128 n.8 (2007) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149

bases its standing on speculative fears of possible future harm and, thus, has failed to allege an imminent injury.  Brady Campaign, on the other hand, urges that its members' prospective injuries are sufficiently imminent to give it standing to sue because: (a) Brady Campaign members residing in Kansas face an imminent threat of gun violence as a result of the Act, and (b) Mayor Gernon faces an imminent threat of prosecution and civil liability under the Act's enforcement provisions.  The Court will address each asserted injury separately.

### A.  Fear and Other Emotional Harms Associated with Changes to Firearms Laws

Brady Campaign first contends that the Act, by nullifying federal gun control laws designed to ensure public safety, makes the state of Kansas a more dangerous place.  Brady Campaign does not claim that any of its members have suffered an actual injury from a "Kansas" firearm or any other weapon as a result of the Act's enforcement.  Rather, Brady Campaign argues that the Act imposes an unacceptable risk of future gun violence on the organization's Kansas-based members.  That risk, Brady Campaign contends, is sufficiently imminent to satisfy Article III's injury-in-fact requirement.

For an asserted injury to be imminent, it must be real and immediate—not remote, speculative, conjectural, or hypothetical.[24]  Though the Supreme Court has described the concept as "somewhat elastic," it has cautioned that imminence "cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly*

---

(1967)).  The issues of imminence and ripeness really "boil down to the same question," in this case.  The Court considers this question in the context of standing throughout this opinion.  *Accord Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 n.5 (2014).

[24]*See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013); *Lujan*, 504 U.S. at 560; *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

impending."[25]  Thus, the Supreme Court has stated: "[W]e have said many times before and reiterate today: Allegations of possible future injury do not satisfy the requirements of Art[icle] III.  A threatened injury must be certainly impending to constitute injury in fact."[26]

The Court cannot find that an increased risk of future gun violence in itself is a concrete and particularized injury; it is too abstract and speculative.[27]  Moreover, it is impossible to say who, among the millions of people potentially affected by the Act, might someday suffer injury as a result of the asserted risk of harm imposed by its enforcement.  For any particular individual, the likelihood of being injured in a shooting is remote, and the time when any such injury might occur is entirely uncertain.  Thus, under the circumstances presented here, Brady Campaign has not shown that any one of its individual members suffers anything but a wholly speculative—much less a "certainly impending"—prospect of future injury.  It may be true that enforcement of the Act will someday result in instances of gun violence in Kansas or elsewhere, but it is purely speculative to say that any particular individual, including a Brady Campaign member, will be personally and concretely injured by such violence.[28]  Indeed, because any of the feared injuries alleged in the Complaint are entirely dependent on the decisions of some indeterminate third party to (a) own or obtain a firearm covered by the Act, (b) carry that firearm to a place, among the countless possible places, where a Brady Campaign

---

[25]*Clapper*, 133 S. Ct. at 1147.

[26]*Whitmore*, 495 U.S. at 158 (internal quotation marks and citation omitted); *see Clapper*, 133 S. Ct. at 1147 ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." (internal quotation marks and citation omitted)).

[27]*See Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1297–98 (D.C. Cir. 2007).

[28]*See Clapper*, 133 S. Ct. at 1148–49; *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–08 (1983).

member happens to be at a specific point in time, and (c) discharge that firearm precisely in the direction of the Brady Campaign member, Brady Campaign's factual allegations concerning a risk of future injury are necessarily speculative.[29]

Brady Campaign alleges that some of its members are at special risk of gun violence based on past experiences with gun violence and threats associated with their activism in the gun violence prevention movement.[30]  Before the Supreme Court's decision in *Clapper v. Amnesty International USA*,[31] some courts accepted such "special risk" theories as sufficient to demonstrate an actual or imminent injury.[32]  In *Clapper*, a collection of attorneys and human-rights, labor, legal, and media organizations sought to challenge a statutory amendment authorizing the government to conduct surveillance of certain electronic communications without first demonstrating probable cause.[33]  The plaintiffs attempted to establish injury in fact based on the likelihood that their communications with foreign contacts would be targeted under the amendment.[34]  The plaintiffs also claimed to experience a

---

[29]*See In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 25–26 (D.D.C. 2014) ("Courts for this reason are reluctant to grant standing where the alleged future injury depends on the actions of an independent third party." (citing *Clapper*, 133 S. Ct. at 1150)).

[30]*See* Doc. 1 ¶¶ 19–23.

[31]133 S. Ct. 1138 (2013).

[32]*See, e.g.*, *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 28 (D.D.C. 2009) (finding standing based on Brady Campaign members' increased fear of gun violence in certain national parks and wildlife refuges, which "Brady's members visit[ed] and enjoy[ed] . . . on a frequent basis"); *Brady Campaign to Prevent Gun Violence United with the Million Mom March v. Ashcroft*, 339 F. Supp. 2d 68, 75–76 (D.D.C. 2004) (finding the presence of an actual injury because "[s]pecific members of the Brady Campaign live in neighborhoods where violent crimes involving [semiautomatic weapons] occur at higher than average rates; and the challenged ATF policy increases the risk that criminals in those neighborhoods will be able to obtain [semiautomatic weapons], thus increasing the risk of violent [semiautomatic weapon] related crimes involving Brady Campaign members.").

[33]*Clapper*, 133 S. Ct. at 1144.

[34]*Id.* at 1145, 1147–48.

special risk of injury because their communications were especially likely to be intercepted by federal agents.[35]  The Supreme Court found that the risk of injury was too speculative to qualify as imminent: there were, the Court reasoned, simply too many contingencies on which the occurrence of a future injury depended, and the plaintiffs could only speculate that their *own* communications would someday be targeted under the amendment.[36]  The Supreme Court therefore rejected the plaintiffs' claims to an injury in fact, and held that they failed to show a "certainly impending" risk that federal agents would target their communications.[37]  Since *Clapper*, courts have recognized that the relevant inquiry is not whether the plaintiff suffers a "special risk" of injury, but whether the risk they experience is "certainly impending."[38]

The Complaint alleges that Temme witnessed a shooting at a New Year's Eve party in December 2013 and then was present, along with Does 1 and 2, at the Jewish Community Center of Greater Kansas City when a mass shooting occurred there last year.  Koch lost a 14-year-old brother in a shooting in Missouri in 1953.  The Supreme Court has recognized that, while "[p]ast wrongs are evidence bearing on 'whether there is a real and immediate threat of repeated injury,'"[39] "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive

---

[35]*Id.* at 1145 ("Specifically, respondents claim that they communicate by telephone and e-mail with people the Government believes . . . to be associated with terrorist organizations, people located in geographic areas that are a special focus of the Government's counterterrorism or diplomatic efforts, and activists who oppose governments that are supported by the United States Government." (internal quotation marks omitted)).

[36]*Id.* at 1148–49.

[37]*Id.* at 1147–48.

[38]*See, e.g.*, *Sci. Applications Int'l Corp.*, 45 F. Supp. 3d at 25; *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 654 (S.D. Ohio 2014).

[39]*Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

relief . . . if unaccompanied by any continuing, present adverse effects.'"[40]  The mere fact that Temme,

Koch, and the Doe plaintiffs previously witnessed gun violence does not make them more prone to

suffer injury as a result of the Act's enforcement.  Plaintiff does not allege facts that would establish or

lead to a reasonable inference that these past experiences would recur, or that would make these

members more prone to be repeat witnesses or targets of gun violence tied to enforcement of the Act.

Indeed, there is no indication that these incidents are traceable to the Act at all: Koch's brother died

long before it was enacted, and although Temme's and the Does' experiences occurred after the Act

was passed, there is no factual allegation that those incidents involved "Kansas" firearms or that, absent

the existence of the Act, federal law would have prevented the incidents.  Indeed, Brady Campaign

alleges in paragraph 19 of the Complaint that the Jewish Community Center shooter obtained firearms

despite his "prohibited purchaser" status under federal law.

Brady Campaign also alleges a certainly impending injury because its members have

experienced threats of violence due to their gun control advocacy.   The Complaint alleges that Temme

has spoken publicly about his experience as a witness of the Jewish Community Center shooting, and

has been the subject of hateful internet attacks that he fears will be acted upon by individuals

sympathizing with the shooter.  The Complaint cites one example of a verbal threat  that Temme "must

be attacked with the same level of venomous attack he perpetrates."  Koch has also received threats

after local newspapers published his letters-to-the-editor supporting gun control.  But the Court finds

that the threats described in the Complaint are too vague to raise an inference of risk to Temme or

---

[40]*Id.*

13

Koch under the exacting standard of a "certainly impending" risk that either suffers an imminent risk of gun violence.  The Court can only speculate about the possibility of a shooting occurring.  There is no allegation that these threats even reference firearms.  Moreover, the Act only applies to "Kansas" firearms; the Court cannot infer from the facts alleged whether the threatened violence would involve Kansas-made firearms that are stamped "made in Kansas" and that have never crossed state lines.

In sum, the Court is unable to conclude that Plaintiff met its burden of establishing an injury in fact for any of its members based on an increased risk of violence under the Act.

**B.      Threat of Criminal Prosecution or Civil Enforcement**

Brady Campaign's next asserted injury is that Brady Campaign members are subject to the criminal and civil enforcement provisions in the Act.  But the only member for whom the Act's enforcement provisions are alleged to specifically apply is Mayor Gernon.  Brady Campaign alleges that Mayor Gernon has "all executive and administrative authority" on behalf of the City, including the authority to adopt policies that govern the local police department and to weigh in on the hiring, firing, and discipline of local police officers.  Brady Campaign thus contends Mayor Gernon is subject to prosecution as a "federal agent" under § 50-1207 of the Act "for any enforcement activities that involve federal authorities."[41]  Brady Campaign also alleges that in his role as a physician with the University of Kansas School of Medicine, Mayor Gernon could be considered an "official, agent, or employee of the state of Kansas," within the meaning of K.S.A. § 50-1206 and is therefore subject to potential civil claims for violating the Act's prohibitions. Defendants argue that the Act's enforcement provisions do not plausibly apply to Mayor Gernon and that, accordingly, no Kansas official or employee has ever

---

[41]Doc. 19 at 15.

threatened to prosecute him, nor has there been any threat to bring civil enforcement measures against

him.  Brady Campaign responds that it need not demonstrate specific government plans to prosecute

Mayer Gernon because if the Act's enforcement provisions arguably proscribe Mayor Gernon's

prospective conduct, that is enough to establish an imminent threat of prosecution.

In general, a plaintiff need not await the consummation of a government prosecution before

obtaining injunctive or declaratory relief; so long as a prosecution is "imminent," the plaintiff may

challenge the constitutionality of a criminal statute without risking arrest by performing the conduct

proscribed.[42]  Brady Campaign may meet this standard either by demonstrating that Mayor Gernon's

injury is certainly impending, or that he faces a credible threat of future prosecution under the Act.

### 1.    Clearly Impending Standard

Under the "imminence" standard discussed in the last section, the injury must be certainly

impending in order to confer standing.[43]  To meet this standard, however, the plaintiff must set forth

"concrete plans" to perform, in the near future, the conduct that would subject him to the threatened

injury.[44]  Where a plaintiff alleges mere " 'some day' intentions" to engage in certain conduct, without

"any specification of *when* the some day will be," any future harm that might flow from that conduct is

necessarily conjectural or hypothetical rather than imminent.[45]

Additionally, courts have considered whether an alleged threat of prosecution "target[s] the

---

[42]*See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law to be enforced.").

[43]*Id.* at 128–29.

[44]*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 & n.2 (1992).

[45]*Id.* at 564.

plaintiff's planned conduct with some degree of specificity."[46]  The "mere existence of a statute," or

even an official's general statement that the government intends to enforce a statutory prohibition against

the public, is ordinarily insufficient to establish an imminent threat of prosecution as to a particular

plaintiff.[47]  Thus, in *International Longshoremen's Ass'n, AFL-CIO v. Waterfront Commission of*

*New York Harbor*,[48] the Southern District of New York found that the plaintiffs alleged an imminent

threat of prosecution where they had received warning letters from a state commission explaining that

the plaintiffs' planned conduct would be illegal.[49]  The warning letters reflected a specific threat to

prosecute, and distinguished that case from an earlier one in which the plaintiffs failed to show an

imminent threat because they alleged only that the state intended to enforce the law generally.[50]

Similarly, courts in the Ninth Circuit consider "whether the prosecuting authorities have communicated a

specific warning or threat to initiate proceedings" when evaluating the imminence of a future

prosecution.[51]  And the First Circuit has recognized a "well established" principle that, at least outside

the context of a First Amendment challenge to a criminal statute, the threat of prosecution must be

---

[46]*Jones v. Schneiderman*, No. 11-CV-8215, 2015 WL 1454529, at *4 (S.D.N.Y. Mar. 31, 2015) (reviewing cases).

[47]*See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995) (recognizing that "the mere existence of a statute . . . is ordinarily not enough to sustain a judicial challenge, even by one who reasonably believes that the law applies to him and will be enforced against him according to its terms." (quoting *Nat'l Student Ass'n v. Hershey*, 412 F.2d 1103, 1110 (D.C. Cir. 1969)); *see also Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 871 (9th Cir. 2013); *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010).

[48]495 F. Supp. 1101 (S.D.N.Y. 1980), *rev'd on other grounds by Int'l Longshoremen's Ass'n, AFL-CIO v. Waterfront Comm'n of N.Y. Harbor*, 642 F.2d 666 (2d Cir. 1981).

[49]*Id.* at 1110 & n.7.

[50]*Id.* (citing *Linehan v. Waterfront Comm'n of N.Y. Harbor*, 116 F. Supp. 401, 404 (S.D.N.Y. 1953), *aff'd sub nom. Linehan v. Waterfront Comm'n of N.Y. Harbor*, 347 U.S. 439 (1954)).

[51]*Wolfson*, 616 F.3d at 1058.  The Ninth Circuit also considers "whether the plaintiff has articulated a concrete plan to violate the law in question" as well as "the history of past prosecution or enforcement under the challenged statute."  *Id.*

"reasonably clear and specific" to confer standing.[52]

Applying those principles to the facts at issue here, the Court concludes that Brady Campaign falls well short of alleging a "certainly impending" threat of prosecution as to Mayor Gernon.  First, the Complaint does not indicate that Mayor Gernon has any concrete plans to engage in conduct proscribed by the Act.[53]  Though Brady Campaign alleges that Mayor Gernon retains authority to adopt policies and procedures governing the city police department, it does not specify when he might direct or participate in enforcement of federal regulations with respect to "Kansas" firearms.[54]  In fact, Brady Campaign does not even allege the " 'some day' intentions" the Supreme Court has held insufficient to demonstrate an imminent injury: the Complaint does not state that Mayor Gernon has ever enforced federal gun laws in the past or that he intends to enforce them at any point in the future.[55] Only in its response to Defendants' motion to dismiss does Brady Campaign suggest the possibility of Mayor Gernon enforcing federal regulations.  Even there, however, Brady Campaign does not contend that Mayor Gernon ever intends to do so; it simply argues that he would be subject to the Act "for any enforcement activities that involve federal authorities."  The possibility that he will someday be subject to prosecution, therefore, is purely conjectural.[56]

---

[52]*N.H. Hemp Council, Inc. v. Marshall*, 203 F.3d 1, 4 (1st Cir. 2000).

[53]*See* K.S.A. § 50-1207 (making it a felony for federal officials or agents to enforce federal regulations with respect to firearms made, owned, and having always remained within Kansas borders); *id.* § 1206(b) (prohibiting employees of state and local governments from doing likewise).

[54]*See Schneiderman*, 2015 WL 1454529, at *7 (finding that "indeterminate commitment to an act does not rise to the level of a concrete plan, and so cannot engender a corresponding imminent threat of prosecution," where the plaintiff asserted it could "potentially" engage in the proscribed conduct if permitted to do so).

[55] Doc. 19 at 15.

[56]*Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 & n.2 (1992) (finding that the plaintiffs' "profession of an 'intent' to return to the places they had visited before," without a description of when they might do so, failed to establish an imminent injury).

The speculative nature of the threat to Mayer Gernon is only compounded by the lack of a specific statement or warning from the State suggesting that any of Mayor Gernon's planned conduct is unlawful under the Act.[57]  Brady Campaign does not allege that any prosecutor in Kansas has ever targeted, or currently has plans to target, a local official like Mayor Gernon for the conduct described in the Complaint.  In fact, Defendants argue that the Act's enforcement provisions do not apply to an individual in Mayor Gernon's position at all.  At best, Brady Campaign alleges a highly generalized threat of prosecution based on the "mere existence of a proscriptive statute" and an intention on the part of Defendants to enforce it according to its terms.[58]  That is not enough to establish a "certainly impending" threat of prosecution,[59] especially where, as here, the plaintiff has not alleged any intention or desire to engage in conduct proscribed by the challenged statute.  The Court finds that Brady Campaign fails to allege an imminent injury under the "certainly impending" imminence standard.

## 2.      Credible Threat Standard

The Supreme Court has recently explained that a plaintiff will have standing for pre-enforcement review "where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder.'"[60] Brady Campaign's asserted injury is insufficient under this test as well.

---

[57]*See Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010).

[58]*Cf. Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 871 (9th Cir. 2013) (observing that the "mere existence of a proscriptive statute" ordinarily does not suffice to establish an imminent threat of prosecution).

[59]*See id.*; *see also New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995) (recognizing that "the mere existence of a statute . . . is ordinarily not enough to sustain a judicial challenge, even by one who reasonably believes that the law applies to him and will be enforced against him according to its terms." (quoting *Nat'l Student Ass'n v. Hershey*, 412 F.2d 1103, 1110 (D.C. Cir. 1969)).

[60]*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

The most glaring obstacle to a credible threat of prosecution is that Brady Campaign fails to allege that Mayor Gernon intends to engage in conduct the Act forbids, as the Court has already explained.  The Complaint states that Mayor Gernon (1) adopts policies and procedures governing city employees, including the Hiawatha Chief of Police, (2) retains authority to make hiring, firing, and disciplinary decisions with respect to local police officers, and (3) instructs local police officers to "look into" complaints Mayor Gernon receives from Hiawatha residents.[61]  None of these duties suggest that Mayor Gernon has ever previously enforced federal gun laws with respect to "Kansas" firearms, nor do they suggest he will have occasion to do so in the future.  As already discussed, there are no allegations in the Complaint about Mayor Gernon's intention to engage in certain conduct; only that he arguably retains authority to engage in such conduct.[62]

Second, the intended conduct at issue here—Mayor Gernon's participation in enforcing federal gun control laws—is not arguably affected with a constitutional interest.  Courts have interpreted the phrase "arguably affected with a constitutional interest," to require that the plaintiff's proscribed conduct be constitutionally protected.[63]  Brady Campaign does not identify a constitutional protection

---

[61]Doc. 1 ¶ 18.

[62]In *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082 (10th Cir. 2006), the Tenth Circuit held that, in the First Amendment context, plaintiffs need not show they have "specific plans or intentions" to engage in proscribed conduct in order to establish a credible threat of prosecution, as long as they present: "(1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so *because* of a credible threat that the statute will be enforced." *Id.* at 1088 (emphasis in original).  To the extent such a test might apply outside the First Amendment context, the Court notes that Brady Campaign has not met any of the test's requirements here: the Complaint does not state that Mayor Gernon has previously engaged in conduct proscribed by the Act, nor does it state that he is refraining from doing so because of a threat of prosecution.

[63]*See, e.g.*, *Susan B. Anthony List*, 134 S. Ct. at 2344 ("Because petitioners' intended future conduct concerns political speech, it is certainly 'affected with a constitutional interest.' " (quoting *Babbitt*, 442 U.S. at 298)); *Ward v. Utah*, 321 F.3d 1263, 1269 (10th Cir. 2003) (finding standing under the "credible threat" standard because the plaintiff alleged the challenged statute had a " 'chilling effect' on his desire to engage in First Amendment

applicable to Mayor Gernon's intended conduct, and the Court is unaware of any constitutionally-protected right of a city mayor to enforce federal firearm regulations.  Absent an allegation that the Act impinges on a constitutional right of Mayor Gernon, the "credible threat" standard is not met.  Nor does it change the Court's analysis that Brady Campaign's claims arise under the Constitution's Supremacy Clause and Due Process Clause.  As the Supreme Court has made clear, it is the plaintiff's *conduct*, not its *claims*, that must be constitutionally protected.[64]

Moreover, Mayor Gernon's intended future conduct is not arguably proscribed by the statute.  Section 50-1207 of the Act makes it a felony "for any official, agent or employee of the government of the United States, or employee of a corporation providing services to the government of the United States," to enforce federal Commerce Clause regulations with respect to "Kansas" firearms.[65]  Defendants contend that this section does not apply to local government officials like Mayor Gernon.  Brady Campaign disagrees, arguing that Mayor Gernon may be prosecuted as a "federal agent" under

---

activities"); *Jones v. Schneiderman*, No. 11-CV-8215, 2015 WL 1454529, at *3 n.4 (S.D.N.Y. Mar. 31, 2015) (finding that the "credible threat" standard did not apply because the plaintiff did not identify any "constitutional protection" for the prospective conduct at issue); *Second Amendment Arms v. City of Chicago*, No. 10-cv-4257, 2012 WL 4464900, at *8 (N.D. Ill. Sept. 25, 2012) ("As a general matter, a plaintiff who wishes to engage in conduct arguably *protected by the Constitution*, but proscribed by a statute or ordinance, successfully demonstrates an immediate risk of injury." (emphasis added)); *Deida v. City of Milwaukee*, 192 F. Supp. 2d 899, 907 (E.D. Wisc. 2002) ("[The plaintiff's] conduct, leafleting cars, is 'affected with a constitutional interest' because leafleting is a form of speech protected by the First Amendment." (citation omitted)); *see also Babbitt*, 442 U.S. at 298 ("[I]t is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his *constitutional rights*." (emphasis added) (internal quotation marks and citations omitted)).

[64]*Babbitt*, 442 U.S. at 298 (holding the "credible threat" standard applicable "[w]hen the plaintiff has alleged an intention to engage in a *course of conduct* arguably affected with a constitutional interest" (emphasis added)); *see also Knife Rights, Inc. v. Vance*, No. 11-CV-3918, 2013 WL 5434610, at *3 (S.D.N.Y. Sept. 25, 2013) (applying the "certainly impending" imminence standard to an as-applied vagueness challenge that did not implicate constitutionally protected conduct).  *But see Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 & n.5 (9th Cir. 2013) (suggesting, without analysis, that the plaintiff's conduct was affected with a constitutional interest because she challenged a criminal statute "on constitutional grounds").

[65]K.S.A. § 50-1207.

§ 50-1207 if  he engages in "enforcement activities that involve federal authorities."[66]  Alternatively,

because Mayor Gernon is an employee of the University of Kansas, and because "the University of

Kansas provides services to the federal government through such programs as Medicaid and

Medicare,"[67] Brady Campaign asserts that Mayor Gernon is subject to prosecution under § 50-1207

as an "employee of a corporation providing services to the United States government."

Brady Campaign's federal agent argument hinges on the statutory meaning of the term "agent"

and the possibility that Mayor Gernon's duties, as alleged in the Complaint, might make him a federal

agent under § 50-1207.  The Act itself does not define the term "agent."  Courts have applied

common-law agency concepts to determine when a state or local police officer might fairly be deemed

to assume status as a federal actor.  In *United States v. Leos-Hermosillo*,[68] for example, the Ninth

Circuit considered whether knowledge of a local police officer could be attributed to federal

prosecutors for purposes of determining compliance with the federal government's *Brady* obligations.[69]

The court found that although the officer was not employed by a federal department or agency, he was

still an "agent of the federal government" because he acted on the behalf of the United States and was

subject to the federal prosecution team's control.[70]  Similarly, in *Askew v. Bloemker*,[71] the Seventh

Circuit held that a local police officer was not amenable to suit under 42 U.S.C. § 1983 because, at the

---

[66]Doc. 19 at 15.

[67]*Id.* at 16.

[68]2000 WL 300967 (9th Cir. Mar. 22, 2000).

[69]*Id.* at *3.

[70]*Id.*

[71]548 F.2d 673 (7th Cir. 1976).

time of his allegedly unlawful conduct, he was acting as a federal agent rather than a state agent: though paid by the City of St. Louis, the officer's actions "were subject to the immediate control" of the Office of Drug Abuse Law Enforcement, an arm of the United States Department of Justice.[72]  These holdings appear consistent with the common-law agency principles adopted by the Kansas Supreme Court, which, for its part, has defined an "agent" as one who "act[s] on [a] principal's behalf and subject to the principal's control."[73]

Mayor Gernon is therefore arguably a federal "agent" under § 50-1207 only if he acts subject to the control of the federal government.  The facts alleged in Brady Campaign's Complaint, however, do not suggest that he has ever acted under federal authority in the past or that he will have occasion to do so in the future.  In fact, the Complaint does not allege that Mayor Gernon's official duties call for interaction with federal officers at all.[74]  Absent allegations raising an inference that Mayor Gernon sometimes acts subject to the control of the federal government, the Court can only speculate whether § 50-1207 applies to Mayor Gernon's enforcement activities, rendering any threat of future prosecution "wholly conjectural."[75]

---

[72]*Id.* at 677.

[73]*Golden Rule Ins. Co. v. Tomlinson*, 335 P.3d 1178, 1188 (Kan. 2014) (citing Restatement (Third) of Agency § 1.01 (2005)); *see also* 3 Am. Jur. 2d Agency § 2 ("Indeed, the essential feature of agency is the right of control, which right includes the right to dictate the means and details of the agent's performance.").

[74]Although Brady Campaign alleges that Mayor Gernon retains some authority over the local police department, the Complaint does not describe any mayoral responsibility that touches on the affairs of the federal government.  *See* Doc. 1 ¶ 18.

[75]*See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2344 (2014) (quotation marks and citation omitted); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." (quotation marks and citation omitted)); *Nat'l Council for Improved Health v. Shalala*, 122 F.3d 878, 884 (10th Cir. 1997) ("When we are left to speculate as to the nature of the claim plaintiffs may desire to make, and the treatment such a hypothetical claim may receive under the regulations, plaintiffs have failed to allege a sufficient injury in fact.").

Equally conjectural is the possibility that Mayor Gernon will be prosecuted under § 50-1207 because he is a physician and professor at the University of Kansas.  Though the University of Kansas may be a "corporation providing services to the government of the United States,"[76] and Mayor Gernon might therefore technically fall within the Act's provisions based on the happenstance of his separate employment with the university, Brady Campaign does not contend that Mayor Gernon's positions with the university have any connection to his law enforcement activities or involve conduct for which an individual could be prosecuted under the Act.  It is pure conjecture to say that a Kansas prosecutor might someday parse the language of § 50-1207 and attempt to apply that section to Mayor Gernon based on the fortuity of his separate employment by a corporation "providing services" to the federal government.  It is possible, of course.  But in light of the apparent purpose of § 50-1207—to deter *federal* actors from enforcing federal gun control laws—that possibility is too remote to establish that his conduct is arguably proscribed by the statute.  Even under the more permissive "credible threat" standard, "the possibility of future enforcement need not be reduced to zero to defeat standing."[77]

Brady Campaign also argues that Mayor Gernon's intended conduct is subject to a credible threat of civil enforcement under §§ 50-1206(b) and 50-1208.  Section 50-1208 authorizes government attorneys to seek injunctive relief to prevent the conduct criminalized in § 50-1207 and, like § 50-1207, applies only to federal actors.[78]  Section 50-1206(b), by contrast, prohibits "official[s],

---

[76]K.S.A. § 50-1207.

[77]*Mink v. Suthers*, 482 F.3d 1244, 1255 (10th Cir. 2007) (quoting *Winsness v. Yocom*, 433 F.3d 727, 733 (10th Cir. 2006)) (internal quotation marks omitted).

[78]*See* K.S.A. § 50-1208 ("A county or district attorney, or the attorney general, may seek injunctive relief in any court of competent jurisdiction to enjoin any official, agent or employee of the government of the United States or employee of a corporation providing services to the Government of the United States from enforcing any act, law, treaty, order, rule or regulation of the government of the United States regarding a firearm, a firearm accessory, or ammunition that is manufactured commercially or privately owned in the state of Kansas and that remains within the

agent[s], or employee[s] of the state of Kansas, or any political subdivisions thereof" from applying federal regulations to firearms made and kept in Kansas.[79]  The Act does not provide for a private right of action for damages or injunctive relief against state or local government actors, therefore the Court cannot find that the intended conduct is arguably proscribed by the civil enforcement mechanisms of the Act.

Finally, the Court cannot find that the threat of future enforcement of this statute against the Brady Campaign members is substantial.[80]  As detailed above, the facts alleged in the Complaint do not suggest that Mayor Gernon has ever previously applied federal regulations to "Kansas" firearms, that Kansas officials have enforced the Act against local officials, or that the Act has been enforced at all at this point.  For all of the reasons discussed earlier, the court finds that at this time the prospect of future enforcement of the Act against Mayor Gernon, or any other Brady Campaign member, is purely speculative.

## III.    Conclusion

For the foregoing reasons, the Court finds that at this time, Brady Campaign has not alleged an actual or imminent injury that is fairly traceable to the enforcement of the Act and redressable by a favorable decision by this Court.  Brady Campaign, therefore, lacks Article III standing to mount a constitutional challenge to the Second Amendment Protection Act.  The Court therefore need not reach the other issues raised in Defendants' motion to dismiss.  The Court grants Defendants' motion to dismiss for lack of subject matter jurisdiction.

---

borders of Kansas.").

[79]K.S.A. § 50-1206(b).

[80]*See Susan B. Anthony List*, 134 S. Ct. at 2345.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss

(Doc. 13) is **GRANTED.**  This case is dismissed in its entirety without prejudice for lack of subject

matter jurisdiction.

Dated: June 5, 2015

                               S/ Julie A. Robinson
                               JULIE A. ROBINSON
                               UNITED STATES DISTRICT JUDGE